FRANK LULEVITCH and ANNA J. LULEVITCH, complainants-appellees,

*v.*

HORACE ROBERTS, defendant-appellant.

[Decided May 18th, 1925.]

1. A preliminary injunction will not be issued where the right of the complainant depends upon an unsettled question of law. *Citizens Coach Co.* v. *Camden Horse Railway Co., 29 N. J. Eq. 299,* followed.

2. Accordingly, the writ will not be issued to restrain an upper proprietor from interfering with the natural flow of surface water across his land and onto that of his neighbor by gathering the same into an indefinite number of drain pipes.

On appeal from an order of the court of chancery.

*Mr. Albert S. Woodruff* and *Mr. Carl Kisselman,* for the complainants.

*Mr. George B. Evans,* for the appellant.

The opinion of the court was delivered by

CLARK, J.

This is an appeal from an order of the court of chancery, granting a preliminary injunction. Complainants, a husband and wife, own a twenty-six-acre farm in Delaware township, Camden county. It is bounded on two sides by embankments, one of which was constructed for the laying out of Chapel avenue, and the other is an embankment of the Pennsylvania Railroad Company. The slope of the ground, consequently the natural drainage of the surface water, on this farm is from east to west. In November, 1922, com-

plainants sold to the defendant a triangular tract constituting the easterly and higher portion of the farm. The latter commenced the improvement of his parcel by the erection of dwelling-houses thereon. For more convenient access to these houses a road was built along the three-hundred-yard boundary between the land sold to the defendant and that remaining in the ownership of the complainants. The fill necessary to the construction of this road acted as a dam, and impounded such surface water as the topography of the ground would otherwise have caused to flow onto complainants' farm. To release this water, and so prevent a washout of the road, the defendant inserted two terra-cotta drain pipes in the fill. The measurements of these pipes do not appear from the record.

It is complainants' contention that before the erection of the fill and the installation of the drain pipes, the rain water flowing from one parcel to the other disappeared through natural seepage. At the present time, however, the increased flow of water is flooding their land and making it unfit for cultivation or pasturage. In this situation the court below enjoined defendant from using the aforesaid drain pipes or in any other way causing the surface water to be drained upon the ground of the complainants, "except as it used theretofore or anciently to flow."

This, we think, to have been error. The general rules of law governing the ordering of a preliminary injunction are too long and too well settled to require any restatement or elaboration at this time. They are reiterated, and the opinion of Chief-Justice Beasley, speaking for this court in *Citizens Coach Co.* v. *Camden Horse Railway Co., 29 N. J. Eq. 299,* again approved in a deliverance of this court at the last term. *3 N. J. Adv. R. 475.* In our view, the complainants in the case at bar should fail because their right seems to depend upon an unsettled question of law. In this respect, then, they are lacking, we think, the second of the three prerequisites to a preliminary injunction called for by the rule in the case of *Citizens Coach Co.* v. *Camden Horse Railway Co., supra.*

The proofs do not indicate that any district other than the defendant's tract has been drained. The averment, with regard to used water from the houses, is so couched as to have reference entirely to future probabilities. There has been, then, no increase in the whole volume of water flowing upon complainant's land. Nor is there any showing that there has been a change in the direction of the surface water. Further, the defendant, in his answer, states his willingness to add to the two original drain pipes by installing a "greater number."

It is true, of course, that the use of any artificial channels, such as the drains, in the case at bar, prevents the natural spread of the surface water and disturbs the uniformity of its flow. To the extent, then, that it is so gathered, its velocity and volume at any particular place is increased. Equally, such acceleration and unusual quantity may be too great to permit the absorbent qualities of the soil to dispose of the water by seepage at such place. We have seen that the defendant has offered to indefinitely increase the number of drain pipes. It seems clear, therefore, that the affirmance of the order involves *ex necessitate* a holding that any concentration of the natural flow of surface waters in artificial channels—if accompanied by the necessary irreparable injury—presents a case for injunctive relief. There seems to be some color in our cases for such a ruling. We are not, however, prepared to make it upon a bill for a preliminary injunction.

The law of surface waters is largely arbitrary and free from decisive principles. *27 R. C. L.* § *68 et seq.* Three distinct doctrines in respect to the problem presented by the case at bar seem to obtain and to have found support in the decided cases. That adopted from the Roman and civil law creates a servitude between adjoining proprietors, by which the lower proprietor is bound to receive the waters which naturally flow from the estate above, and, in turn, the upper proprietor must not prevent such waters from reaching his neighbor below in the usual manner. *Pardessus Traite des Servitudes 86, pp. 119, 120; Pinkstaff* v. *Steffy, 216 Ill. 406;*

*75 N. E. Rep. 163; Rhoades v. Davidheiser, 133 Pa. St. 226; 19 Atl. Rep. 400.* The language of the order in the case at bar resembles strikingly the words of Dommat, a French writer on the civil law, wherein he observes that "when surface waters by the nature of the place have course from one ground to another, the proprietors of the said grounds cannot innovate anything as to the ancient course of the waters." *1 Dommat 616.* It does not seem to us quite appropriate in the order of a New Jersey court, because we have given our adherence to the contrary doctrine of the common law, which regards surface water as a common enemy which each may keep off his land as best he can, assimilating the law of surface waters with the law of percolating waters, rather than that of water courses. *Town of Union v. Durkes, 38 N. J. Law 21; Jessup v. Bamford Bros., 66 N. J. Law 641.* The cases expressing this theory are extensively reviewed in the United States supreme court case of *Walker v. New Mexico and Southern Pacific Railroad, 165 U. S. 593.* This rule seems to have appeared, first, in this country in Massachusetts (*Gannon v. Hargadon, 10 All. 106*), and in the form in which it has been expanded by our courts, has, perhaps, gone somewhat beyond the original English doctrine. *Taylor v. Fickas, 64 Ind. 167; Adams v. Walker, 34 Conn. 466.* There is some basis for believing that the expression "common enemy," in its original use by Lord Tenterden, referred to the sea and not to surface waters. *Farnh. Waters 2591.* The third view as to the flowage of surface waters, namely, that of reasonable use, does not concern us here. See *Am. L. June, 1922.*

The cases above cited indicate clearly that this court has given its sanction to Chief-Justice Beasley's original declaration of the "common enemy" doctrine (*Jessup v. Bamford Bros., supra*), at any rate so far as it applies to the turning back of water by the lower proprietor (*Bowlsby v. Speer, 31 N. J. Law 351*), or to this diversion, resulting in personal injury. *Lightcap v. Lehigh Valley Railroad Co., 90 N. J. Law 620.* On the other hand, we have condemned the drainage by artificial means of a large district, which results in

the casting of collected waters upon the lands of another. *West Orange* v. *Field, 37 N. J. Eq. 600.* The law of surface waters in the phases which we have discussed does not, therefore, seem to be established in this state. As we have said, the application for a preliminary injunction is not the time at which they should be settled. *Dodge* v. *Pennsylvania Railroad, 45 N. J. Eq. 366.*

The order of the court of chancery granting a preliminary injunction is reversed.

*For affirmance*—KALISCH, KATZENBACH, VAN BUSKIRK, KAYS, JJ. 4.

*For reversal*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, MINTURN, BLACK, CAMPBELL, LLOYD, WHITE, GARDNER, CLARK, MCGLENNON, JJ. 11.